UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 4:19-CR-00294-RLW |
| DEMETRIUS SMITH, | ) ) ) | |
| Defendant. | ) ) | |

## GUILTY-PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

1. **PARTIES:**

The parties are the defendant Demetrius Smith, represented by defense counsel Kenneth R. Schwartz and Kay Parish, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

2. **GUILTY PLEA:**

A. **The Plea:** Pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, in exchange for Defendant's voluntary plea of guilty to Counts One, Three, Five, Seven, and Nine of the First Superseding Indictment, the United States agrees to move for the dismissal as to Defendant of Counts Two, Four, Six, Eight, Ten, and Eleven at the time of sentencing. Moreover, the United States agrees that no further federal prosecution will be brought

in this District relative to Defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the Indictment.

  **B.**   **The Sentence:**   The parties agree that the recommendations contained herein fairly and accurately set forth some guidelines that may be applicable to this case. **Further, based upon the unique circumstances of this case, the parties jointly recommend a sentence of 22 years (264 months).**

3.   **ELEMENTS:**

As to Counts One, Three, Five, and Seven, the defendant admits to knowingly violating Title 18, United States Code, Section 1951, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

  (i)   The Defendant knowingly robbed a commercial establishment engaged in interstate or foreign commerce;

  (ii)   The robbery involved personal property: cellular phones and cash;

  (iii)   The personal property was in the custody of an employee of the commercial establishment; and

  (iv)   The Defendant's actions obstructed, delayed, and affected commerce in some way or degree.

As to Count Nine, the defendant admits to knowingly violating Title 18, United States Code, Section 1951, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

  (i)   The Defendant knowingly attempted to rob a commercial establishment engaged in interstate or foreign commerce;

  (ii)   The attempted robbery involved personal property, cash;

  (iii) The cash was in the custody of an employee of the commercial establishment; and

  (iv) the defendant's actions obstructed, delayed, and affected commerce in some way or degree.

4. **FACTS:**

The parties agree that the facts in this case are as follows and that the United States would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

In mid-to-late November 2018, defendant Demetrius Smith engaged in an ongoing course of conduct that involved the armed robbery of four commercial establishments, and an attempted armed robbery of a fifth commercial establishment. Two days after the final robbery, Smith was arrested while possessing a firearm. All four robberies and the attempted robbery, as well as the unlawful weapon possession, occurred in St. Louis County, within the Eastern District of Missouri. The victims in all four robberies and the attempted robbery—T-Mobile, MetroPCS, Bucky's Express, QuikTrip, and 7-Eleven—are commercial establishments engaged in interstate or foreign commerce and in the business of buying and selling articles and commodities that have been previously transported in interstate or foreign commerce.

Smith used a consistent *modus operandi* in each of the robberies. He frequently used his cell phone to call the targeted stores to see if a manager was present. Smith thought that with a manager present, he was more likely to access the safe during the robbery. He walked by the stores immediately before each robbery. He waited for a moment when there were no customers and only a single employee in the store before robbing it. If a customer came in during the robbery, he abandoned the robbery and fled. Texts messages show that on other days, he abandoned plans to rob stores because he saw too many people patronizing the stores. During the

course of each robbery, he demanded access to the safe and became frustrated if he could not access it.

### First Robbery – T-Mobile Store

In the evening hours of November 14, 2018, Smith was planning to carry out a robbery the following morning. Smith exchanged text messages with a friend, discussing that the snow forecast for the morning would mean fewer customers in stores, and a delayed police response. Smith later texted that with Black Friday the following week (November 23, 2018), cell phone stores would be "loaded." On November 15, 2018, Smith lay in wait outside the T-Mobile store in Creve Coeur, Missouri, armed with a firearm. Starting shortly after 10:00 a.m.—the scheduled store opening time—Smith began calling the store on his cellphone. Cellular records show he was outside the store when making these calls. Because of the snow, the store was still closed and would not open until 10:38 a.m. At 10:10 a.m., Smith texted a friend, complaining that the store was still closed. Over 31 minutes, Smith called the store at least 5 times. At 10:38 a.m., the store opened and Smith nearly immediately thereafter walked by the window storefront. He returned 10 minutes later, put a mask over his face, and entered the store.

Smith directed the sole employee, a young female, into the back room. She failed to respond to him, so Smith physically grabbed her and pulled her into the back room, telling her to go to the back room if she did not want to die. He openly displayed a firearm and held it with the barrel of the gun up against her back, directing her to open the safe, which she did. After she opened the safe, Smith placed new cellular phones into his bag. As he did this, the clerk attempted to use her cellular phone. Smith knocked the phone out of her hands, pushed her into a corner of the room, and yelled for her to get onto her knees. She complied with his demands. Smith then fled the store, along with cell phones valued at $19,789.

### Second Robbery – MetroPCS Store

Smith began casing the MetroPCS store in Bridgeton, Missouri, on November 20, 2018. In text messages between him and a friend while sitting in the store parking lot, Smith described the other stores in the parking lot, confirming that the store he was casing was the store he eventually robbed. He had called the store from his cell phone earlier that day. In his text messages, Smith referenced using a duffel bag, and then referenced the make of cellular phones he was planning on stealing. He said that he wanted to get as many as possible because he was "done" after this robbery. Smith then specifically mentioned Samsung and Apple, two popular phone manufacturers. Smith planned to rob the store with a friend on the evening of November 20, 2018, but abandoned this plan due to the number of people in the store.

Smith returned to the MetroPCS store in Bridgeton, Missouri the following day, on November 21, 2018. Once again, phone records show that he called the store in the later afternoon. Security footage showed Smith walking by the store with a duffel bag at 6:30 p.m. He returned, still carrying the duffel bag, at 7:00 p.m. and proceeded to rob the store. At the time of the robbery, there was a single employee visible in the public portion of the store. Unbeknownst to Smith, the manager was in the back room. Smith entered the store with his firearm in his hand, and demanded the employee bring him to the back room. In the back room with the manager, Smith demanded the employees get on the floor while pointing the firearm at each employee. He then instructed them to stand up and fill his duffel bag with cell phones. Smith stole 19 cellular phones valued at $4,888.43. He would have stolen more, but he dropped his bag and left behind approximately 10 cellular phones that fell out of the bag. As he was leaving, Smith demanded the manager open the cash register, and Smith stole approximately $200 cash. He then fled the store.

Following this robbery, Smith took 13 of the 19 stolen phones to a separate phone store in St. Louis County. There, he traded the phones for $850 cash. The individual to whom Smith sold the phones picked Smith out of a line-up and identified him as the individual who traded in the stolen phones. When Smith was arrested six days later, his car contained the duffel bag used in the robbery. The duffel bag was unique due to its size and the presence of wheels on the outside of the bag.

### Third Robbery – Bucky's Express

In the evening of November 23, 2018, Smith once again began to text a friend discussing robberies. They discussed various business, whether they have security cameras, how many employees were on duty, and whether the store safes would be accessible to managers. They discussed specific stores in Richmond Heights and in St. Louis County on Page Avenue. They also discussed how much money an overnight shift may have, and whether the race of the storeowner would affect how much money would be present. One of the specific stores mentioned was the Bucky's Express on Page Avenue.

A few hours later, at 12:05 a.m. on November 24, 2018, Smith entered the Overland, Missouri, Bucky's Express on Page Avenue and brandished a firearm to the clerk. He demanded cash and threatened the clerk. When Smith saw the small amount of money in the cash register, he demanded the clerk tell him where the "hundreds" were, a reference to $100 bills. The clerk could not access the safe, and Smith fled with $370. After Smith was later arrested and police seized his firearm, the clerk identified Smith's firearm as the firearm used in the robbery, noting the markings and colors of the front sight on the barrel of the firearm.

Surveillance footage from a nearby apartment shows Smith arriving at and fleeing from the robbery. That surveillance footage captured Smith running down an embankment from the

Bucky's Express and back to his car. It also captured the license plate of the car, which is the car Smith rented and was in possession of when arrested.

### Fourth Robbery – QuikTrip

After robbing the Bucky's Express, Smith traveled 3.7 miles to the QuikTrip in Maryland Heights, Missouri, which he robbed at 12:25 a.m. on November 24, 2018. Nine minutes prior to the robbery, Smith called the QuikTrip from his cell phone and asked if a manager was present. Smith did so in an attempt to ensure someone was present to open the safe. When Smith arrived at the QuikTrip, he entered at a time when no customers were present. One of Smith's hands was in his sweatshirt pocket, and he partially removed his hand from the pocket to show he was holding a firearm. After brandishing the firearm, he demanded money from the clerk and followed the clerk behind the cash register. When the employee opened the register and Smith saw how little money was available, Smith demanded the "real money." Smith pointed to the safe. The employee stated he could not access the safe. The employee was able to access a roll of $5 bills totaling $100 and provided it to Smith. Smith then fled the scene. The employee later identified Smith as the robber via a photo line-up.

### Fifth (Attempted) Robbery – 7-Eleven

After robbing the QuikTrip, Smith traveled 1.3 miles to the 7-Eleven in unincorporated St. Louis County, Missouri, which he attempted to rob at 12:42 a.m. on November 24, 2018. Smith entered the store and walked around, ensuring no customers were present. When the clerk asked if he needed help, Smith raised the bottom of his sweatshirt and displayed the butt of a firearm tucked into his pants. He stated, "Go open the safe and do what I tell you, and I won't hurt you." The clerk went to the register and Smith followed him. While the clerk was attempting to open the register, a customer began approaching the 7-Eleven and Smith fled the scene before receiving

any money or property.

### Seized Clothing and Firearm

On November 26, 2018, police from the Overland Police Department located Smith at his apartment as they were investigating the robbery of the Bucky's Express. Police searched the car that Smith rented and which he used during the robberies. The car contained the duffel bag used in the second robbery. The car contained the gloves worn by Smith in the second, third, fourth, and fifth robberies. The car also contained a firearm, which Smith admitted to possessing. This firearm was the firearm used by Smith in all five robberies. At the time of his arrest, Smith was wearing black pants and a black sweatshirt. The black sweatshirt was the sweatshirt worn by Smith during the second, third, fourth, and fifth robberies. The pants were the pants worn by Smith during the first, third, fourth, and fifth robberies.

The firearm was submitted to and analyzed by a firearm expert with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. The firearm was determined to be a Springfield Armory make, model XD-S, .45 caliber semi-automatic pistol with one round chambered and an additional five rounds loaded in the magazine. It was test fired and functioned as designed. It is a "firearm" as defined under federal law. The defendant knowingly possessed the firearm in furtherance of crimes of violence.

5.   **STATUTORY PENALTIES:**

As to Counts One, Three, Five, Seven, and Nine, the defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not more than 3 years.

6. <u>U.S. SENTENCING GUIDELINES: 2018 MANUAL</u>

Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply:

A. <u>Offense Conduct</u>:

### COUNTS ONE, THREE, FIVE, SEVEN, AND NINE
### HOBBS ACT ROBBERY

(i) <u>Chapter 2 Offense Conduct</u>:

(a) <u>Base Offense Level</u>: The parties agree that, as to each count, the Base Offense Level is 20, as found in Section 2B3.1.

(b) <u>Specific Offense Characteristics</u>: The parties agree that, as to each count, the following Specific Offense Characteristics apply: The parties agree that five levels should be added pursuant to Section 2B3.1(b)(2)(C) because a firearm was brandished.

(ii) <u>Chapter 3 and 4 Adjustments</u>:

(a) <u>Grouping of Multiple Counts:</u> The parties agree that the five counts of robbery and attempted robbery do not group pursuant to Section 3D1.2(d) and Application Note 6. The parties agree that the Combined Offense Level should be determined as follows: With five counts having an individual offense level of 25, pursuant to Section 3D1.4, the offense level is increased by 4 levels because the defendant has 5 units.

(b) <u>Acceptance of Responsibility:</u> The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility.

The parties agree that if Defendant does not abide by all of the agreements made within this document, Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that Defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

   **B.**   **Estimated Total Offense Level:**   Based on these recommendations, the parties estimate that the Total Offense Level is 27, unless defendant is a Career Offender. Depending on the underlying offense and defendant's criminal history, defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that Defendant is or is not a Career Offender.

   **C.**   **Criminal History:**   The determination of Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to Defendant's criminal history and the applicable category. Defendant's criminal history is known to Defendant and is substantially available in the Pretrial Services Report.

D. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made herein, but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

A. **Appeal:** Defendant has been fully apprised by defense counsel of Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

i. **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

ii. **Sentencing Issues:** In the event the Court accepts the plea and sentences Defendant consistent with or below the parties' jointly recommended sentence of 264 months, then, as part of this agreement, Defendant hereby waives all rights to appeal all sentencing issues other than Criminal History. Similarly, the United States hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea and sentences Defendant consistent with or above the parties' jointly recommended sentence of 264 months.

B. **Habeas Corpus:** Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States

Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

  C. **Right to Records:** Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8. **OTHER:**

  A. **Disclosures Required by the United States Probation Office:** Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the United States.

  B. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against Defendant.

  C. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon Defendant and may impose special conditions related to the crime Defendant committed. These conditions will be restrictions on Defendant to which Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. Defendant understands that parole has been abolished.

D.  **Mandatory Special Assessment:**  This offense is subject to the provisions of the Criminal Fines Improvement Act of 1987 and the Court is required to impose a mandatory special assessment of $100 per count for a total of $500, which Defendant agrees to pay at the time of sentencing.  Money paid by Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

E.  **Possibility of Detention:**  Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

F.  **Fines and Costs of Incarceration and Supervision:**  The Court may impose a fine, costs of incarceration, and costs of supervision.  Defendant agrees that any fine imposed by the Court will be due and payable immediately.

G.  **Forfeiture:**  Defendant agrees to forfeit all of Defendant's interest in all items seized by law-enforcement officials during the course of their investigation.  Defendant admits that all United States currency, weapons, property, and assets seized by law enforcement officials during their investigation constitute the proceeds of Defendant's illegal activity, were commingled with illegal proceeds, or were used to facilitate the illegal activity.  Defendant agrees to execute any documents and take all steps needed to transfer title or ownership of said items to the United States and to rebut the claims of nominees and/or alleged third party owners.  Defendant further agrees that said items may be disposed of by law enforcement officials in any manner.

9.  **ACKNOWLEDGMENT AND WAIVER OF DEFENDANT'S RIGHTS:**

In pleading guilty, Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to

require the United States to prove the elements of the offenses charged against Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. Defendant further understands that by this guilty plea, Defendant expressly waives all the rights set forth in this paragraph.

Defendant fully understands that Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. Defendant's counsel has explained these rights and the consequences of the waiver of these rights. Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant is fully satisfied with the representation received from defense counsel. Defendant has reviewed the United States' evidence and discussed the United States' case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which Defendant has requested relative to the United States' case and any defenses.

10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. Defendant further acknowledges that this guilty plea is made of Defendant's own free will and that Defendant is, in fact, guilty.

**11.    CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if Defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The United States may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the United States agrees to dismiss or not to bring.

7/24/2022
Date

Jason S. Dunkel
Assistant United States Attorney

7/23/22
Date

Demetrius Smith
Defendant

7/23/22
Date

Kenneth R. Schwartz / Kay Parish
Attorney for Defendant